UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In Re:                                    Bankr. Case No. 05-39651
                                          Adv. Pro. No. 06-3120
Mark Allen Jesperson,

       Debtor.

Educational Credit Management          Civil No. 07-3076(DSD)
Corporation,

       Appellant,

v.                                                    **ORDER**

Mark Allen Jesperson,

       Appellee.


    A.L. Brown, Associate Attorney, Educational Credit Management Corporation, 101 East Fifth Street, Suite 200, St. Paul, MN 55101 and William Fisher, Esq., Henry Wang, Esq. and Gray, Plant, Mooty, Mooty & Bennett, 500 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for appellant.

    Douglas W. Paul, Esq., Monica L. Clark, Esq. and Dorsey & Whitney, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, counsel for appellee.


    This matter is before the court on the appeal of Educational Credit Management Corporation ("ECMC")[1] of a final judgment by the United States Bankruptcy Court for the District of Minnesota.[2]

---

    [1] ECMC was the only entity to file an appeal in this matter.

    [2] The Honorable Dennis D. O'Brien, Judge, United States Bankruptcy Court for the District of Minnesota, presiding.

Based upon a review of the file, record and proceedings herein, and for the following reasons, the court affirms the judgment of the bankruptcy court.

**BACKGROUND**

On March 20, 2006, appellee Mark Allen Jesperson ("Jesperson") filed an action in United States Bankruptcy Court to discharge his student loan debt pursuant to 11 U.S.C. § 523(a)(8). In February 2007, at the time of the bankruptcy court trial, Jesperson was forty-three years old and unmarried. He has two children, ages five years and nineteen months, from different relationships. By court order, Jesperson is required to pay $500 per month in child support for his five-year-old son, and he expects to be responsible for an equal amount for his nineteen-month-old in the near future. (Jesperson Dep. at 179-81.) Jesperson has no other dependents and suffers no physical impairments or limitations that could interfere with his ability to maintain employment. He is a recovering alcoholic who has been sober since October 1996.

Jesperson is a college and law school graduate. However, his path through higher education was unusual and lengthy. Jesperson took eleven years to complete his undergraduate degree, attending the University of Wisconsin LaCrosse from 1983 to 1984, the College of St. Scholastica from 1987 to 1988 and a 1991 summer session and the University of Minnesota-Duluth from 1991 to 1994. During

Jesperson's extended absences from his undergraduate studies he sought and received deferments and forbearance from his student loan lenders and made no payments. In 1995, Jesperson began law school at Hamline University School of Law. After an alcoholic relapse in 1996, Jesperson transferred to Lewis and Clark School of Law in 1997 and received his Juris Doctor in 2000. Jesperson passed the Minnesota bar on his first attempt in February 2002.

Upon passing the bar exam, Jesperson secured a judicial clerkship at the Superior Court in the Northern Mariana Islands from March 2002 to January 2003. Jesperson left that position prematurely because his then-girlfriend claimed she needed surgery. Jesperson next secured a job as a legal services attorney in Kotzebue, Alaska, in August 2003. He again voluntarily quit his job, this time in March 2004 because of harsh living conditions and a supervisor who drank on the job. (Id. at 76-79.) Jesperson moved back to Minnesota and briefly operated a solo law practice in Grand Marais. However, he only had two clients, and he closed down his practice after six months. Since then, Jesperson has worked at temporary attorney jobs through the staffing agencies Kelly Services, Inc. and Spherion Professional Services. He left Kelly after a dispute about holiday pay. At the time of trial, Jesperson worked for Spherion on an account with the Minneapolis-based law firm Faegre and Benson, LLP. He earned approximately $25 an hour, and his roughly $48,000 per year salary is the greatest Jesperson

has made since graduating from law school. See Jesperson v. U.S. Dep't of Educ. (*In re* Jesperson), 366 B.R. 908, 910 (Bankr. D. Minn. 2007).

Jesperson borrowed heavily from government and private lenders to subsidize his undergraduate and legal education. He has never made a voluntary payment towards his student loans. As of January 30, 2007, Jesperson owed $304,463.62 on his eighteen unconsolidated loans held by ECMC, consisting of $197,837.24 in principal, $48,463.09 in collection costs and $48,163.29 in accrued and unpaid interest. Id. at 913.

Jesperson's ECMC loans are eligible for consolidation or the Income Contingent Repayment Program ("ICRP") pursuant to the federal guaranteed student loan program. Under the ICRP, if Jesperson consolidated his ECMC loans, the required monthly payment amount would be calculated based only on his annual adjusted gross income ("AGI"), and the outstanding loan balance would be irrelevant. Id. The ICRP annual payment amount is equal to twenty percent of the difference between the borrower's AGI and the poverty level for the borrower's family size. Id. That amount is then divided by twelve to arrive at the required monthly payment. The ICRP allows forbearance and deferment programs of up to three years for unemployment, hardship or disability. After twenty-five years of participation in the ICRP, the Department of Education "cancels" any remaining unpaid balance, although the IRS views the

cancellation as a taxable event if the participant is solvent at the time.  Id.  Based on Jesperson's 2006 AGI, his 2007 ICRP payments would be $58 per month based on a family size of one, $5 per month based on a family size of two or zero based on a family size of three.  Id.  Assuming that Jesperson continues his work for Spherion and achieves an AGI for 2007 of $48,000, his monthly ICRP payments would be approximately $629 for a family size of one, $572 for two or $514 for three.  Id.

Jesperson also claims monthly living expenses.  Although initially scheduling $1,315 in monthly expenses, Jesperson later revised his estimate and claimed $3,411.66 per month.  Id. at 911-12.  The bankruptcy court determined that his expenses were reasonable with several exceptions and subtracted the "clothing for children," cigarette and child support arrears amounts from Jesperson's estimate.  Id. at 912.  The bankruptcy court, however, found that Jesperson underestimated automobile costs, and it added $100 for insurance and vehicle maintenance.  Id.  After those subtractions and addition, the bankruptcy court determined that Jesperson's monthly expenses were at least $2,857, while his monthly income was approximately $2,680.  Id. at 912-13.

The bankruptcy court then considered whether Jesperson's debt constituted an undue hardship and was worthy of discharge.  Id. at 914.  It employed a "totality of the circumstances" test as set forth in Long v. Educ. Credit Mgmt. Corp. *(In re Long)*, 322 F.3d

549 (8th Cir. 2003), and weighed Jesperson's past, present and future financial resources; his reasonable and necessary living expenses; and any other relevant circumstances. <u>In re</u> <u>Jesperson</u>, 366 B.R. at 914.  The bankruptcy court noted that the availability of ICRP was just one factor to consider, especially because the ICRP and the undue hardship inquiry employed different standards for measuring the debtor's ability to pay.  <u>Id.</u>  Ultimately, the bankruptcy court determined that the question of undue hardship was "whether a certain debtor can afford to repay that debtor's student loans, whatever the amount, while still funding a fundamentally ordinary needs-based existence for himself and his dependents." <u>Id.</u> at 916.  Applying this standard to the facts before it, the bankruptcy court found that Jesperson's loans constituted an undue hardship for the purposes of 11 U.S.C. § 523(a)(8) and accordingly discharged his loans.

On July 18, 2007, ECMC appealed the bankruptcy court's decision.  ECMC argues that the bankruptcy court improperly added expenditures to Jesperson's claimed expenses and erred in finding that Jesperson faced an undue hardship.  The court now addresses those issues.

**DISCUSSION**

**I.   Factual Findings**

The bankruptcy court determined that Jesperson's monthly expenses totaled $2,857.  Although this amount was approximately $600 less than the estimate submitted by Jesperson, ECMC objects that the bankruptcy court erred by adding items to the expense schedule without evidentiary support.  In particular, ECMC objects to the bankruptcy court increasing Jesperson's housing and car allowances beyond what he was actually paying and including a child support payment for his infant son.

The court reviews the findings of fact upon which a determination of undue hardship is based for clear error.  See *In re* Long, 322 F.3d 549, 553 (8th Cir. 2003).  A finding is "clearly erroneous when although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed."  Hatcher v. U.S. Tr. (*In re* Hatcher), 218 B.R. 441, 445-46 (B.A.P. 8th Cir. 1998) (internal quotation omitted).  In other words, the decision "must strike the reviewing court as more than just maybe or probably wrong; it must strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish."  Ford v. Student Loan Guarantee Found of Ark. (*In re* Ford), 269 B.R. 673, 674 (B.A.P. 8th Cir. 2001) (internal quotation omitted).

Courts are justified in considering a debtor's reasonably foreseeable future expenses.  See id. at 555; see also Smith v. Educ. Credit Mgmt. Corp. (*In re* Smith), 328 B.R. 605, 613 (B.A.P. 1st Cir. 2005).  However, a court may not calculate future expenses based on pure speculation.  See *In re* Smith, 328 B.R. at 613. Instead, the record must show that the debtor has incurred, currently incurs or will incur the future expenses.  See id.  The reviewing court may affirm the bankruptcy court on any evidence supported by the record.  See *In re* Hatcher, 218 B.R. at 446.

At the bankruptcy court hearing, Jesperson submitted scheduled expenses that included $1,000 for rent and utilities, $500 in child support for his infant son and $41.66 for vehicle maintenance.  The record shows that Jesperson has paid at least $700 in rent and utilities in the past and that the $500 he paid in rent at the time of trial was skewed because he was renting from a family member. (See Jesperson Dep. at 85-86.)  Moreover, whether court ordered or not, the record demonstrates that Jesperson has made and will continue to make child support payments to his younger son.  (See id. at 88.)  Accordingly, evidence on the record supports Jesperson's housing and child support expenses, and the bankruptcy court was not clearly erroneous in accepting them.

Jesperson also submitted $41.66 for monthly auto maintenance. He made no claim, however, for auto insurance or additional vehicle maintenance, despite driving a 1988 pickup truck with over 200,000

miles on it. See *In re* Jesperson, 366 B.R. at 912. Although the state of Jesperson's vehicle could justify an increase in his monthly auto maintenance budget, there was no evidentiary support for the inclusion of auto insurance in Jesperson's budget. Jesperson had not included the cost himself nor was there proof that he had insured his truck in the past. As the bankruptcy court failed to specify how the additional $100 was to be allocated, and because the court will not speculate on the split between maintenance and insurance, the court finds that the bankruptcy court was clearly erroneous in adding the entire $100 for auto insurance and maintenance to Jesperson's schedule.

**II.  Undue Hardship**

The bankruptcy court reviewed Jesperson's case under a totality-of-the-circumstances test and decided to discharge his student loan debt. ECMC argues that the bankruptcy court's discharge contravened the undue hardship standard. Specifically, ECMC asserts that the bankruptcy court erred by underestimating Jesperson's potential future income, overestimating his necessary expenses, failing to account for his lack of good faith and disregarding the potential impact of the ICRP.

The question of whether declining to discharge student loan debt would pose undue hardship is a question of law to be reviewed *de novo*. See Reynolds v. Penn. Higher Educ. Assistance Agency (*In re* Reynolds), 425 F.3d 526, 531 (8th Cir. 2005). Pursuant to 11

9

U.S.C. § 423(a)(8), student loans may be discharged for "undue hardship." The debtor bears the burden of proof by a preponderance of the evidence to prove an undue hardship. See In re Ford, 269 B.R. at 675. The court determines undue hardship based on a "totality of the circumstances" test. See In re Long, 322 F.3d at 554-55. Under this test, the court considers: (1) the debtor's past, present and reasonably reliable future financial resources; (2) a calculation of the debtor's and his dependents' reasonable necessary living expenses; and (3) any other relevant facts and circumstances in the particular bankruptcy case. See id. at 554; Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702, 704-05 (8th Cir. 1981). Simply put, "if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt - while still allowing for a minimal standard of living - then the debt should not be discharged." In re Long, 322 F.3d at 554-55. Each undue hardship case must be "examined on the unique facts and circumstances that surround the particular bankruptcy." In re Reynolds, 425 F.3d at 532.

    **A.   Jesperson's Financial Resources**

In reviewing Jesperson's financial resources, the bankruptcy court determined that Jesperson "has little hope of obtaining legal employment other than as a temp," that his past work experiences were "besmirched by a patent lack of ambition, cooperation and

commitment" and that he is "essentially downwardly mobile." *In re Jesperson*, 366 B.R. at 911. It concluded that although "Jesperson is educated and in basically good health, he remains a person with narrowly limited resources and restricted opportunities ... [who has found] professional success thus far excessively challenging." Id. at 919. ECMC argues that Jesperson has a higher earning capability than the bankruptcy court acknowledged. In considering the debtor's past, present and reasonably certain future financial resources, the court examines the debtor's employment, work history and earnings capability. See Limkemann v. U.S. Dep't of Educ. (*In re* Limkemann), 314 B.R. 190, 194 (Bankr. N.D. Iowa 2004).

Although it is tempting to agree with ECMC's assertion that Jesperson has failed to maximize his earnings capability given his high level of education, the court must also consider Jesperson's employment history. That history reveals that despite employment in varying legal positions - from law clerk to legal services attorney to solo practitioner - Jesperson has never earned a higher salary than he is currently earning. Nor does Jesperson have any apparent prospects of a new job. Further, there is nothing in the record to suggest that Jesperson is on an upward employment track or even that he will maintain his current salary. See *In re Jesperson*, 366 B.R. at 911. Therefore, the court finds that the

11

bankruptcy court's evaluation of Jesperson's past, present and reasonably certain future financial resources was appropriate in this case.

**B.   Jesperson's Reasonable Necessary Living Expenses**

After finding that Jesperson's initial scheduled expenses of $1,315 were "so inaccurately low as to be ignorant," the bankruptcy court reviewed his submission of $3,411.66 and determined that $2,757 of it was reasonable.  The bankruptcy court added $100 for auto insurance and maintenance and determined that Jesperson's monthly expenditures were $2,857.  ECMC argues that the bankruptcy court erred in calculating these expenses.

To be reasonable and necessary, expenses must be "modest, not extravagant, and commensurate with the debtor's resources." In re Limkemann, 314 B.R. at 195.  Further, provided that total expenses remain minimal, the debtor "is not expected or required to implement every cost-saving measure." Id.  A bankruptcy court's determination of a debtor's living expenses is a factual finding that a reviewing court will not set aside unless clearly erroneous. See Cumberworth v. U.S. Dep't of Educ. (In re Cumberworth), 347 B.R. 652, 659 (B.A.P. 8th Cir. 2006).

As discussed above, the bankruptcy court erred by adding $100 in auto insurance and maintenance to Jesperson's monthly expenses. However, that erroneous addition was the exception in the bankruptcy court's analysis of Jesperson's expenses.  Indeed, the

bankruptcy court reduced Jesperson's expenditures by nearly $700 per month, and the record supports Jesperson's remaining expenses for rent, child support, food, parking, gas and auto maintenance based on Jesperson's family and work obligations.  Accordingly, the bankruptcy court did not clearly err in its determination of Jesperson's reasonable necessary living expenses.

### C.   Other Relevant Facts and Circumstances

In the third part of the totality-of-the-circumstances test, the bankruptcy court weighed facts and circumstances unique to Jesperson, including his age, history of alcohol abuse and treatment, two children and varied employment history.  ECMC argues that the bankruptcy court failed to properly account for other circumstances affecting Jesperson's case, particularly his lack of good faith in repaying the loans and the potential impact of the ICRP.

#### 1.   Good Faith

Good faith is a prong of the three-part undue hardship test set forth in Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987).  It is not, however, a specific feature of the "less restrictive approach to the 'undue hardship' inquiry" in this Circuit.  In re Long, 322 F.3d at 554.  Rather, it is just one of the non-economic factors like age or disability that a bankruptcy court may consider.  See In re Cumberworth, 347 B.R. at 661-62.  While the bankruptcy court can weigh these factors, an

undue hardship determination does not turn on one alone. See Nelson v. TG Collections & Tex. Guaranteed Student Loan Corp. (*In re* Nelson), 343 B.R. 919, 923-24 (Bankr. S.D. Iowa 2006) (the "relevant facts and circumstances" factor allows the court flexibility under totality-of-the-circumstances test).

The bankruptcy court acknowledged that Jesperson never made a voluntary payment towards his student loan debt, but it did not comment further on Jesperson's lack of good faith. Under the totality-of-the-circumstances test, it was not required to do so. Further, although a failure to attempt repayment can weigh against the debtor, the court finds that in this case Jesperson's failure did not represent bad faith. Due to his meandering path through higher education, Jesperson did not enter the workforce in earnest until 2002 - nearly twenty years after he began college. Moreover, in his first four years of work, Jesperson averaged an AGI of $15,828. See *In re* Jesperson, 366 B.R. at 913. Merely surviving on such an income would be difficult, to say nothing of making student loan payments. Therefore, while the court does not approve of Jesperson making no attempt to pay back his loans, it does not find that in this context his failure implies a lack of good faith that affects his discharge.

### 2. Income Contingent Repayment Program

The ICRP "serves a fundamentally different purpose than the discharge provisions of the Bankruptcy Code," and overemphasizing

it could displace the "individualized determination of undue hardship mandated by Congress in § 523(a)(8)." Lee v. Regions Bank Student Loans (*In re* Lee), 352 B.R. 91, 95-96 (B.A.P. 8th Cir. 2006). Though the ICRP "provides temporary relief from the burden of a student loan, ... it does not offer a fresh start." Id. at 97. In fact, "[s]ome aspects of the ICRP might even be viewed as inimical to the goals of the fresh start because the ICRP allows for negative amortization of the student loan debt and a potentially significant tax bill if the student loan is ultimately forgiven after 25 years." Id. Therefore, the availability of the ICRP is "but one factor to be considered in determining undue hardship" and is not determinative. Id. at 95.

The bankruptcy court engaged in a lengthy ICRP analysis and determined that "the lengthy and burdensome participation of the debtor in the ICRP, in this particular case under the totality of these unique circumstances, would result in little or no actual repayment relief to the lenders and loan guarantors in any event." See *In re* Jesperson, 366 B.R. at 918. Even under the ICRP, Jesperson would never be able to make a single payment against his actual ECMC debt. See id. at 917. Further, as the interest on his loans continued to compound during his twenty-five years in the ICRP, Jesperson would face a significant tax burden upon the cancellation of his debt. Having considered all of these consequences, the court determines that the bankruptcy court

appropriately weighed the application of the ICRP in this case.

Ultimately, the thrust of the totality-of-the-circumstances test is whether the debtor's reasonable future financial resources will sufficiently cover payment of the student loan while still allowing for a minimal standard of living. See In re Reynolds, 425 F.3d at 532. Assuming that Jesperson maintains his career-high $48,000 salary, he nets approximately $2,680[3] each month. With $2,757 in reasonable necessary expenditures, Jesperson faces a monthly deficit of $77. Thus, he cannot satisfy his basic monthly needs, let alone make student loan payments.

ECMC argues that by decreasing his expenses or calculating his net income based on a different tax bracket Jesperson could realize a monthly surplus. However, except for the $100 addition, the bankruptcy court did not clearly err in its calculation of Jesperson's income or reasonable monthly expenses. Further, ECMC offered no scenario in which Jesperson's plausible surplus could cover the $514 minimum monthly payments[4] Jesperson would face under the ICRP. For all of these reasons, the bankruptcy court properly applied the totality-of-the-circumstances test to Jesperson and found that he faced undue hardship.

---

[3] Based on the bankruptcy court's presumed 33% income tax bracket.

[4] Calculated according to Jesperson's 2007 AGI and his maximum family size of three.

**CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that the bankruptcy court's opinion discharging Jesperson's student loan debt in its entirety is affirmed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 14, 2007

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court